# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

EUGENE MAZO,

And

LISA MCCORMICK

             Plaintiffs,

vs.

TAHESHA WAY, in her official capacity
as New Jersey Secretary of State,

CHRISTOPHER DURKIN, in his official
capacity as Essex County Clerk,

E. JUNIOR MALDONADO, in his official
capacity as Hudson County Clerk,

JOANNE RAJOPPI, in her official capacity
as Union County Clerk,

PAULA SOLLAMI COVELLO, in her
official capacity as Mercer County Clerk,

ELAINE FLYNN, in her official capacity
as Middlesex County Clerk,

STEVE PETER, in his official capacity as
Somerset County Clerk

             Defendants.

Civil Action No.: 2:20-CV-08174

---

DEFENDANT, JOANNE RAJOPPI'S, BRIEF IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFF, EUGENE MAZO AND LISA MCCORMICK COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Bruce H. Bergen, Esq.
Union County Counsel
Department of Law
Administration Building
Elizabeth, New Jersey 07207
(908) 527-4250
Attorney for the Defendant
Joanne Rajoppi

On the Brief:
Moshood Muftau, Esq.,
Second Deputy Counsel


Serena Zachariah
Law Intern

1

## Table of Contents

PRELIMINARY STATEMENT...............................................................5

STATEMENT OF FACTS................................................................5

LEGAL ARGUMENT...................................................................7

    Standard for Dismissal.............................................................7

    I. The Complaint Must be Dismissed Because Union County Clerk Joanne Rajoppi is an

    Improperly Named Defendant........................................................7

    II. The Complaint Must Be Dismissed Because the Plaintiffs Do Not Have Standing...9

    A. Plaintiffs' Cause of Action is Moot................................................10

    B. Plaintiffs' Cause of Action Does Not Meet the Exception to the Standard for

    Mootness.......................................................................10

    C. Plaintiffs' Cause of Action is Not Ripe for Judicial Review............................12

CONCLUSION.....................................................................15

## Table of Authorities

**Cases**

*In re 2435 Plainfield Ave.*, 223 B.R. 440, 448 (Bankr. D.N.J. 1998)..............................5

*Abbott Labs v. Gardner*, 387 U.S. 136 (1967)......................................12

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)........................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 585 (2007)..................................7

*Eagle-Picher Industries, Inc. v. United States Environmental Protection Agency, 759 F.2d 905 (1985)*...............................................................................................13

*Federal Elections Com'n v. Wisconsin Right to Life, Inc., 551 U.S. 449, 462 (1975)*................11

*Fialka-Feldman v. Oakland University Board of Trustees, 639 F.3d 711, 715 (2011)*................10

*Lewis v. Continental Bank Corp., 494 U.S. 472, 474 (1990)*...................................................10

*Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)*........................................................12

*MacManus v. Allan, 2 N.J. Super.557 (1949)*...........................................................................8

*Production Credit Association v. Farm Credit Admin., 846 F.2d 373 (6th Cir. 1988)*.............13

*Southern Pacific Terminal Co. v. Interstate Commerce Com., 219 U.S. 498 (1911)*................10

*Spencer v. Kemna, 523 U.S.1, 18 (1997)*.................................................................................11

*Texas v. United States, 523 U.S. 296 (1998)*..........................................................................14

**Statutes**

N.J.S.A. 19: 9-3.........................................................................................................8

N.J.S.A. 19: 13-9.........................................................................................................9

N.J.S.A. 19: 23-6.........................................................................................................9

N.J.S.A. 19: 23-14.........................................................................................................7

N.J.S.A. 19: 23-17.........................................................................................................5

N.J.S.A. 19: 23-25.1.......................................................................................................5

N.J.S.A. 19: 31-6a.........................................................................................................8

N.J.S.A. 52:16A-98.......................................................................................................8

NJ Rev Stat § 19:23-8....................................................................................................13

R. 4:28-4...................................................................................................................8

R. 4:67....................................................................................................................11

**Other Authorities**

U.S. Const. art. III.....................................................................................................9,10

2 U.S.C. §7...............................................................................................................13

3 U.S.C. §101............................................................................................................12

Fed.R.Civ.P. 5.1..........................................................................................................8

Fed. R. Civ. P. 12(b)(6)...............................................................................................7,10

Fed.R.Civ.P. 56..........................................................................................................11

Pl.'s Compl...............................................................................................................5-14

**Exhibits**

Exhibit A…………………………………………………………………………...5,13

Exhibit B…………………………………………………………………………...…5,13

Exhibit C…………………………………………………………………...………...11

## PRELIMINARY STATEMENT

Plaintiffs Eugene Mazo and Lisa McCormick have filed a complaint which fails to state a claim upon which relief may be granted and should be dismissed by the court pursuant to the Federal Rule of Civil Procedure 12(b)(6). Even if all of the facts alleged in Plaintiffs' complaint are to be accepted as true, the claims themselves fail as a matter of law when alleged against Defendant Union County Clerk Joanne Rajoppi.

Plaintiffs are former candidates who lost the 2020 Congressional election for New Jersey's Tenth and Twelfth Congressional Districts, respectively. Plaintiffs filed this action on July 7, 2020 against the Secretary of State, Tahesha Way, and Union County Clerk, Joanne Rajoppi, along with several other New Jersey County Clerks, seeking to overturn *N.J.S.A 19:23-17 and §19:23-25.1*, also referred to as the New Jersey Slogan Statutes.

## STATEMENT OF FACTS

Plaintiffs Eugene Mazo and Lisa McCormick are both former candidates for the 2020 Democratic Party nomination for the U.S. House of Representatives in New Jersey's Tenth and Twelfth Congressional districts, respectively. (Pl.'s Compl. at 20). Plaintiffs were defeated in the Democratic Primary on July 7th, 2020. (See Exhibits A, B, Primary Election Results)[1]. Plaintiff Eugene Mazo, on his petition of nomination for the New Jersey primary election, listed the following slogans to be printed on the ballots distributed to Essex, Hudson, and Union counties:

"Essex County Democratic Committee, Inc."

---

[1] Courts may consider documents attached and referred to in the complaint, matters of public record, and authentic documents, without triggering a conversion from a Rule 12(b)(6) motion to a Rule 56 summary judgment motion. *In re 2435 Plainfield Ave.*, 223 B.R. 440, 448 (Bankr. D.N.J. 1998).

Hudson County Democratic Organization"

"Regular Democratic Organization of Union County" (Pl.'s Compl. at 29-30).

Officials within the New Jersey Secretary of State's Division of Elections notified Plaintiff Eugene Mazo that, unless he was authorized by the organizations to use the names of the above mentioned incorporated associations, his nomination petition would read as, "NO SLOGAN." (Pl.'s Compl. at 31). Plaintiff Mazo did not receive the necessary authorizations but instead, used three different slogans with the permission of other New Jersey associations. (Pl.'s Compl. at 32).

Plaintiff Lisa McCormick, on her petition of nomination for the New Jersey primary election, listed the slogan, "Not Me. Us.", to be printed as her slogan. (Pl.'s Compl. at 33). Officials within the New Jersey Secretary of State's Division of Elections notified Plaintiff Lisa McCormick that unless she was authorized by the organizations to use the names of the above mentioned incorporated associations, her nomination petition would read as, "NO SLOGAN." (Pl.'s Compl. at 34). Plaintiff McCormick then listed as her slogan "Bernie Sanders Betrayed the NJ Revolution". (Pl.'s Compl. at 35). Once again, officials within the New Jersey Secretary of State's Division of Elections notified Plaintiff McCormick that unless she was authorized by the organizations to use the names of the above mentioned incorporated associations, her nomination petition would read as, "NO SLOGAN." (Pl.'s Compl. at 36). Plaintiff McCormick having not obtained the required authorizations from Bernie Sanders, used the slogan, "Democrats United for Progress", with the required authorization from that organization. (Pl.'s Compl. at 36-37).

## **LEGAL ARGUMENT**

### **Standard For Dismissal**

The Court may grant a motion to dismiss pursuant to *Fed. R. Civ. P.* 12(b)(6) when the complaint fails "to state a claim upon which relief can be granted.". Courts should grant a motion to dismiss when the plaintiff has not pled facts sufficient to "state a claim to relief that is plausible on its face". *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Although a complaint does not require detailed factual allegations, it must establish grounds for relief that are not merely speculative. *Id.* A complaint can be considered plausible on its face when a plaintiff "pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678.

### **I.** **The Complaint Must be Dismissed Because Union County Clerk Joanne Rajoppi is an Improperly Named Defendant**

Plaintiffs' principal contention is with Union County Clerk Rajoppi's compliance with the New Jersey Slogan Statutes. (Pl.'s Compl. at 2). Plaintiffs argue that by virtue of Joanne Rajoppi's position as Union County Clerk, she is responsible for the claims of unconstitutionality Plaintiffs bring against the New Jersey Slogan Statutes. (Pl.'s Compl. At 4). However, Rajoppi's position as Union County Clerk does not require her to evaluate the constitutional merit of the Slogan Statutes. *N.J.S.A 19:23-14.* In fact, her position requires her to fully comply with the Slogan Statutes and, in doing so, performed no action directly inducing Plaintiffs' alleged constitutional rights violation. "The county clerk shall transmit [campaign slogan certified by municipal clerk] to the Election Law Enforcement Commission in the form and manner prescribed by the commission..." *Id.* "Certainly the duty of the Town Clerk is to print only what

7

complies with the law." *MacManus v. Allan,* 2 N.J. Super. 557 (1949). It cannot be said that a valid claim exists against the Union County Clerk, nor relief be granted to Plaintiffs by the Union County Clerk because she does not hold the authority to enforce New Jersey election statutes. Rather, such responsibility falls under the purview of the Secretary of State. *N.J.S.A. 19:31-6a* and *N.J.S.A 52:16A-98.*

The Federal Rules of Civil Procedure require that plaintiffs drawing into question the Constitutionality of a state statute serve the Attorney General. *Fed.R.Civ.P. 5.1.* "It is better to assure, through notice, that the Attorney General is able to determine whether to seek intervention on the ground that the act or statute affects a public interest." *Id.* Accordingly, New Jersey State Court Rules read that "If the validity of a State constitutional provision or of a statute, rule, regulation, executive order or franchise of this State is questioned in any action to which the State or an agency or officer thereof is not a party, the party raising the question shall give notice of the pendency of the action to the Attorney General." *R. 4:28-4.* Plaintiffs' complaint includes communications from the Secretary of State's office regarding their use of prohibited slogans on their nomination petitions. (Pl.'s Compl. at 34 and 36). Considering that it was only the Secretary of State's office who contacted Plaintiffs regarding this matter, that the Attorney General's office must be notified when the Constitutionality of a state statute is called into question, and that the County Clerk has no election-related duty outside of distributing pre-printed ballots, it is clear that evaluating the constitutionality of state election statutes falls under the purview of the state.

While the Union County Clerk is responsible for providing and maintaining election ballots before the primary election, it is the Secretary of State who delivers to the County Clerk such supplies necessary for the election. *N.J.S.A. 19: 9-3.* Tahesha Way, in her official capacity

as Secretary of State, serves as the Chief Elections Official for the state of New Jersey. *N.J.S.A*

*19:31-6a*. As Chief Elections Official, Tahesha Way has the responsibility to enforce the state's

election statutes including the one at issue. *N.J.S.A. 19:31-6a* and *N.J.S.A. 52:16A-98*. Her

position requires her to serve as the filing officer for individuals running for state and federal

office. *N.J.S.A 19:13-9 and N.J.S.A 19:23-6*. In that regard, Tahesha Way is the only properly

named defendant seeing as she has direct control over enforcement of the statues in question and

has the capacity to provide the relief that Plaintiffs seek.

Plaintiffs note that when contacted with information regarding the elections and the use

of prohibited slogans on their election ballots, such communication was received from officials

within the Secretary of State's Division of Elections.(Pl.'s Compl. at 34 and 36, see Plaintiff's

complaint generally). Considering the well-known role that the Secretary of State plays as chief

elections officer, such communication from the Secretary of State to Plaintiffs is an appropriate

representation of where the responsibility for this cause of action lies. *N.J.S.A 19:31-6a*. There

was no mention in the entirety of Plaintiffs' complaint which demonstrated any overt or direct

action on the part of Union County Clerk, Joanne Rajoppi, necessary to establish her role in this

cause of action, nor was there any action on the part of Joanne Rajoppi regarding the Slogan

Statutes themselves, their validity, or their applicability to Plaintiffs' slogans in the 2020

Congressional primaries.

## II. <u>The Complaint Must Be Dismissed Because Plaintiffs Do Not Have Standing</u>

Article III of the United States Constitution allows federal courts to preside only over

ongoing cases and controversies. *U.S. Const. art. III*. Article III denies federal courts the power

to decide questions that cannot affect the rights of litigants in the case before them. *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 474 (1990).

## A. <u>Plaintiffs' Cause of Action is Moot</u>

Plaintiffs' unsuccessful bid to run for Congressional office with a campaign slogan listed on the ballot that is adverse to New Jersey statutory law, renders this cause of action moot. Considering the primary election has already occurred, there cannot be said to be an existing case or controversy. Plaintiffs' plans to seek Congressional office in the future are merely speculative and insufficient to secure the federal court's jurisdiction over this case as they are not currently Congressional candidates and do not suffer the harm stated in the complaint. (Pl.'s Compl. at 8-9). Under the "case or controversy requirement" in Article III, federal courts are barred from issuing advisory opinions. *U.S. Const. art. III § 2.* "The "case or controversy" requirement prohibits all advisory opinions, not just some advisory opinions and not just advisory opinions that hold little interest to the parties or the public." *Fialka-Feldman v. Oakland University Board of Trustees,* 639 F.3d 711, 715 (2011). It cannot be said that a present case or controversy exists simply because Plaintiffs anticipate violating existing lawful New Jersey election statutes in the future. Therefore, this court lacks subject matter jurisdiction and should dismiss this case pursuant to *Fed. R. Civ. P. 12(b)(1).*

## B. <u>Plaintiffs' Cause of Action Does Not Meet the Exception to the Standard for Mootness</u>

Plaintiffs argue that because of their plans to run in the 2022 primary or general election, the issue is subject to the exception for mootness and is therefore "capable of repetition, yet evading review". *Southern Pacific Terminal Co. v. Interstate Commerce Com.,* 219 U.S. 498 (1911). However, the doctrine applies only in **exceptional circumstances** when the plaintiff has

shown that "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Federal Elections Commission v. Wisconsin Right to Life, Inc.,* 551 U.S. 449, 462 (1975).

Plaintiffs, however, cannot meet the first element of this standard. Courts have ruled that a challenged action is considered to be too short in duration when it cannot be fully reviewed before its expiration. *Spencer v. Kemna,* 523 U.S.1, 18 (1997). It must be noted that the 2020 primary Congressional election cycle has passed and that the 2020 general election cycle is currently taking place. (Exhibit C, Governor Murphy Executive Order). If, in the 2022 Congressional election cycle, Plaintiffs choose to run once again on slogans adverse to the Slogan statutes, they can file a summary action in federal or state court pursuant to Fed.R.Civ.P. 56 or R. 4:67, respectively. At that time, Plaintiffs would be bona fide Congressional candidates and have standing to challenge the election statutes compared to the current situation in which they are bringing litigation simply as individuals who have run for Congressional office in the past. Rather, Plaintiffs' have deliberately decided to bring this claim to litigation two full years from the next election cycle instead of using an alternate means of review, thereby stifling judicial economy. If Plaintiffs seek to address their issues with the New Jersey Slogan statutes in order to be able to run in the next election, they should file a summary action upon determination of a slogan for the next Congressional race.

Plaintiffs' cause of action also fails to meet the second prong of the exception to mootness because it operates on the presumption that the slogans they will choose in the upcoming 2022 Congressional election will either be denied or violate the Slogan Statutes. However, Plaintiffs used current Presidential candidates' names in their slogans. (Pl.'s Compl. at

11

). There is no Presidential election in 2022. 3 U.S.C. §101.  It cannot be therefore established that Plaintiffs would reasonably encounter the same action, seeing as it is unlikely they would be running for the 2022 Congressional election using a slogan including a former Presidential candidate's name. Even if Plaintiffs did plan to run using the name of an individual or association in their slogan, it is speculative to assume that Plaintiffs would not receive permission from said individuals or associations seeing as both Plaintiffs received such permission in the 2020 election. (Pl.'s Compl. at 32, 36-37.)

## C. Plaintiffs' Cause of Action is Not Ripe For Judicial Review

In order to have standing, plaintiffs must allege "an injury in fact" that is "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, Plaintiffs are not asking for a Constitutional evaluation of the Slogan Statutes in order to run in any current election. Rather, Plaintiffs are asking the court to evaluate the Constitutionality of the Slogan Statutes now, so that they may use slogans adverse to current law at some point in the future.

Courts are constitutionally barred from rendering advisory opinions and engaging in hypothetical and abstract debates. *Id.* The doctrine of ripeness aids in avoiding premature adjudication. *Id.* In deciding whether or not a claim is ripe for adjudication, courts employ a two-prong test: (1) Is the claim fit for judicial decision in that it arises in a concrete factual context and concerns a dispute that is likely to come to pass (2) What is the hardship to the parties of withholding court consideration. *Abbott Labs v. Gardner*, 387 U.S. 136 (1967).

The first prong of this test has not been met as established by the facts stated in the complaint. The pleadings state that if Plaintiffs were to lose in the 2020 election, would run for

Congressional office once again in 2022. (Pl.'s Compl. at 22). Plaintiffs were defeated in their

bid for Congressional seats. (Exhibits A, B, Primary Election Results). The next Congressional

election will take place in 2022. (2 U.S.C. §7). The facts and disputes that Plaintiffs argue

require judicial review have not yet occurred. Plaintiffs, by statute, are required to collect 200

signatures in order for their name to appear on a Congressional election ballot. *NJ Rev Stat §*

*19:23-8.* Without having done so, Plaintiffs do not have a claim fit for judicial decision as there is

no concrete factual context from which their claims arise. The continued existence of the Slogan

Statues has no effect on the Plaintiffs' conduct and will not harm Plaintiffs unless and until they

collect enough signatures to be legitimate Congressional candidates. Plaintiffs do not allege that

they have been denied the use of a slogan under the Slogan Statutes for the upcoming 2022

election, and so it cannot be said that there has been a tangible denial of a slogan chosen by the

Plaintiffs from which they may be able to draw harm for this cause of action. Courts have found

that in cases where the primary conduct of the parties is unaffected by a regulation's continued

existence, the challenge to the regulation was not ripe for judicial review. *Production Credit*

*Association v. Farm Credit Admin.*, 846 F.2d 373 (6th Cir. 1988). Furthermore, courts have also

deemed matters unfit for current resolution if it was shown that allowing the question posed arise

in "some more concrete and final form" would confer benefit on the deliberating court. *Eagle-*

*Picher Industries, Inc. v. United States Environmental Protection Agency*, 759 F.2d 905 (1985).

Plaintiffs have not shown that they currently suffer harm due to the Slogan Statutes but rather,

base their cause of action on speculation that the slogans they will choose in the future will be

adverse to the Slogan Statutes.

As for the second prong, the parties allege that their future plans to run in the 2022

Congressional election on slogans contrary to the New Jersey Slogan Statutes would be impeded

if courts were not to take this matter under consideration. (Pl.'s Compl. at 22, 28). Plaintiffs'

argument is contingent upon their plans to run in the future. (Pl.'s Compl. at 22).  This, however,

is insufficient to create a cause of action that is ripe enough for review. *Texas v. United States*,

523 U.S. 296 (1998). "Further, a claim is unripe if it depends on contingent future events." *Id.* at

300. Courts also generally regard conduct that the plaintiff is not required to participate in, as

insufficient create the hardship necessary to meet this prong. *Id.* Plaintiffs have not established

a tangible hardship for which a remedy is available as the harm they describe operates on a

presumption that they will run again and face resistance by the Slogan Statutes. (Pl.'s Compl. at

22, 48-49). However, it is unclear what the political climate will be like in 2022, and whether or

not Plaintiffs' plans to run will involve using the name of another candidate or association.

Plaintiff's claims, therefore, are unripe for judicial review.

## CONCLUSION

For the reasons stated above, the Court should grant Defendant Union County Clerk

Joanne Rajoppi's Motion to Dismiss for Failure to State a Claim for all of the Counts stated in

Plaintiffs' complaint and dismiss Plaintiffs' action.

Respectfully Submitted,

Moshood Muftau, Esq.
Second Deputy Counsel

Serena Zachariah
Law Intern

Dated: 08/01/2020

15

# Exhibit A

8/7/2020                                    Election Results | U.S. ELECTIONS

Advance (nj.com)  

---

**0**
**SHARES**  (f)  (twitter)

## New Jersey Elections Results

| 2020-07-07 ▼ | New Jersey ▼ | U.S. House - District 10 Dem Primary ▼ |

**\* Indicates an uncontested race and will not be tabulated.**

## U.S. House - District 10 - Dem - Primary

### Summary Results
297 of 551 Precincts Reporting - 53.9%                     Updated: Jul. 15, 2020 11:08 am EST

| Party | Name | Votes | Vote % |
|-------|------|-------|--------|
| Dem | Payne Jr., Donald (i) ☑ | 56,327 | 89.34% |
| Dem | Mazo, Eugene | 4,066 | 6.45% |
| Dem | Flora, John | 2,652 | 4.21% |

(i) Incumbent  R Runoff  ☑ Winner

### County Results

#### Essex
171 of 295 Precincts Reporting - 57.97%                     Updated: Jul. 15, 2020 11:08 am EST

| Party | Name | Votes | Vote % |
|-------|------|-------|--------|
| Dem | Payne Jr., Donald (i) ☑ | 34,798 | 89.95% |
| Dem | Mazo, Eugene | 2,724 | 7.04% |
| Dem | Flora, John | 1,166 | 3.01% |

(i) Incumbent  R Runoff  ☑ Winner

#### Hudson
57 of 132 Precincts Reporting - 43.18%                     Updated: Jul. 15, 2020 11:08 am EST

| Party | Name | Votes | Vote % |
|-------|------|-------|--------|
| Dem | Payne Jr., Donald (i) ☑ | 9,902 | 82.65% |
| Dem | Flora, John | 1,151 | 9.61% |
| Dem | Mazo, Eugene | 927 | 7.74% |

(i) Incumbent  R Runoff  ☑ Winner

#### Union
69 of 124 Precincts Reporting - 55.65%                     Updated: Jul. 15, 2020 11:08 am EST

| Party | Name | Votes | Vote % |
|-------|------|-------|--------|
| Dem | Payne Jr., Donald (i) ☑ | 11,627 | 93.94% |
| Dem | Mazo, Eugene | 415 | 3.35% |
| Dem | Flora, John | 335 | 2.71% |

(i) Incumbent  R Runoff  ☑ Winner

THE ASSOCIATED PRESS          Privacy Policy  Terms of Use  AP Books  AP Images  Ap.org          All content © copyright 2020 Associated Press. All rights reserved.

# Exhibit B

8/7/2020                                                    Election Results | U.S. ELECTIONS

Advance (nj.com)    **U.S. ELECTIONS**

---

| 0 | | |
|---|---|---|
| SHARES | 🅕 | 🅣 |

## New Jersey Elections Results

| 2020-07-07 ▾ | New Jersey ▾ | U.S. House - District 12 Dem Primary ▾ |
|---|---|---|

**\* Indicates an uncontested race and will not be tabulated.**

## U.S. House - District 12 - Dem - Primary

### Summary Results
377 of 544 Precincts Reporting - 69.3%                    Updated: Jul. 15, 2020 3:26 pm EST

| Party | Name | Votes | Vote % |
|---|---|---|---|
| Dem | Watson Coleman, Bonnie (i) ✅ | 57,220 | 89.99% |
| Dem | McCormick, Lisa | 6,366 | 10.01% |

(i) Incumbent  R Runoff  ✅Winner

## County Results

### Mercer
133 of 170 Precincts Reporting - 78.24%                    Updated: Jul. 15, 2020 11:08 am EST

| Party | Name | Votes | Vote % |
|---|---|---|---|
| Dem | Watson Coleman, Bonnie (i) ✅ | 27,570 | 89.16% |
| Dem | McCormick, Lisa | 3,351 | 10.84% |

(i) Incumbent  R Runoff  ✅Winner

### Middlesex
155 of 243 Precincts Reporting - 63.79%                    Updated: Jul. 15, 2020 3:26 pm EST

| Party | Name | Votes | Vote % |
|---|---|---|---|
| Dem | Watson Coleman, Bonnie (i) ✅ | 17,985 | 89.88% |
| Dem | McCormick, Lisa | 2,024 | 10.12% |

(i) Incumbent  R Runoff  ✅Winner

### Somerset
40 of 68 Precincts Reporting - 58.82%                    Updated: Jul. 15, 2020 11:08 am EST

| Party | Name | Votes | Vote % |
|---|---|---|---|
| Dem | Watson Coleman, Bonnie (i) ✅ | 4,970 | 88.86% |
| Dem | McCormick, Lisa | 623 | 11.14% |

(i) Incumbent  R Runoff  ✅Winner

### Union
49 of 63 Precincts Reporting - 77.78%                    Updated: Jul. 15, 2020 11:08 am EST

| Party | Name | Votes | Vote % |
|---|---|---|---|
| Dem | Watson Coleman, Bonnie (i) ✅ | 6,695 | 94.79% |
| Dem | McCormick, Lisa | 368 | 5.21% |

(i) Incumbent  R Runoff  ✅Winner

---

THE ASSOCIATED PRESS          Privacy Policy  Terms of Use  AP Results  AP Images  sitemap          All contents © copyright 2020 Associated Press. All rights reserved.

# Exhibit C

EXECUTIVE ORDER NO. 120

WHEREAS, in light of the dangers posed by COVID-19, I issued Executive Order No. 103 (2020) on March 9, 2020, the facts and circumstances of which are adopted by reference herein, which declared both a Public Health Emergency and State of Emergency; and

WHEREAS, to further protect the health, safety, and welfare of New Jersey residents by, among other things, reducing the rate of community spread of COVID-19, I issued Executive Order No. 104 (2020) on March 16, 2020, the facts and circumstances of which are also adopted by reference herein, which established statewide social mitigation strategies for combatting COVID-19; and

WHEREAS, on March 21, 2020, I issued Executive Order No. 107 (2020), superseding Executive Order No. 104 (2020) and requiring New Jersey residents to remain home or at their place of residence subject to limited exceptions, cancelling social gatherings, and limiting all restaurants and other dining establishments to offering only food delivery and/or take-out services; and

WHEREAS, on April 7, 2020, I issued Executive Order No. 119 (2020), which declared that the Public Health Emergency declared in Executive Order No. 103 (2020) continues to exist; and

WHEREAS, as of April 7, 2020, according to the World Health Organization, there were more than 1,279,000 confirmed cases of COVID-19 worldwide, with over 72,000 of those cases having resulted in death; and

WHEREAS, as of April 7, 2020, according to the Centers for Disease Control, there were more than 374,000 confirmed cases of COVID-19 in the United States, with over 12,000 of those cases having resulted in death; and

WHEREAS, as of April 7, 2020, there were over 44,400 positive cases of COVID-19 in New Jersey, with at least 1,232 of those cases having resulted in death; and

2

WHEREAS, on March 19, 2020, I issued Executive Order No. 105 (2020), which declared that certain elections set to take place in March and April were postponed until May 12, 2020, because allowing those elections to proceed as they were originally planned during this unprecedented COVID-19 health crisis would create hardships and health risks for voters, poll workers and candidates alike; and

WHEREAS, pursuant to Executive Order No. 105 (2020), there will be no polling places in the elections now scheduled for May 12, 2020, and all registered voters will instead be receiving vote-by-mail ballots; and

WHEREAS, pursuant to N.J.S.A. 19:2-1 and N.J.S.A. 19:23-40, the primary elections for the November general election are scheduled to be held on June 2, 2020, the Tuesday after the first Monday in June; and

WHEREAS, pursuant to N.J.S.A. 19:2-1, the primary elections for delegates and alternates to the national conventions of political parties are scheduled to be held on June 2, 2020, the Tuesday after the first Monday in June; and

WHEREAS, preparations for the June primary elections begin in earnest in April with, among other steps, the submission of the certified list of suggested polling places pursuant to N.J.S.A. 19:8-2 and the mailing of vote-by-mail ballots for the June primary elections pursuant to N.J.S.A. 19:63-9; and

WHEREAS, public health officials have predicted that the peak of COVID-19 cases in New Jersey will occur in April; and

WHEREAS, preparing for the June primary elections during the potential height of the COVID-19 emergency will negatively impact election officials' preparation efforts; and

3

WHEREAS, the COVID-19 emergency and its impact are likely to extend for an as-yet-undetermined period of time beyond the estimated peak; and

WHEREAS, the uncertain timeline of the COVID-19 emergency makes it difficult for election officials and voters to properly plan and prepare for and fully participate in the June primary elections; and

WHEREAS, in recognition of the severity of and uncertainty surrounding the COVID-19 emergency, the Democratic National Convention has been postponed from July 13-16, 2020, to August 17-20, 2020 - close in time to the Republican National Convention, which is scheduled for August 24-27, 2020; and

WHEREAS, both national party conventions are now being held in August, which mitigates the need for the presidential primary elections and the primary elections for delegates and alternates to the national conventions to be held in June; and

WHEREAS, the June primary elections for the United States Senate, the United States House of the Representatives, and the 25th Legislative District of the New Jersey Legislature, as well as upcoming county and municipal primary elections and county committee elections, are not tied to national or state party conventions, providing flexibility on when they can occur; and

WHEREAS, the June primary elections do not implicate budget deadlines, employment decisions, or forms of government like certain elections that were changed to exclusively vote-by-mail in Executive Order No. 105 (2020), and therefore can be postponed without impacting federal, state, or local government functions; and

WHEREAS, States generally have discretion to dictate the time, manner, and place of elections in the absence of controlling federal law; and

4

WHEREAS, allowing the June primary elections to proceed as they were originally planned during this unprecedented COVID-19 health crisis will create hardships and health risks for voters, poll workers, and candidates alike; and

WHEREAS, election officials require flexibility and sufficient lead time to adapt the State's voting infrastructure to confront the magnitude of the public health and safety risks of the COVID-19 pandemic; and

WHEREAS, social distancing measures are required for a period of as-yet-undetermined duration, and the COVID-19 outbreak may have significant effects on New Jersey's voting systems as long as social distancing measures are in place and for some time thereafter; and

WHEREAS, the full participation of voters and candidates is critical to a robust democracy; and

WHEREAS, failing to take proactive actions to mitigate the adverse impacts of the current health crisis on the upcoming primary and other scheduled elections carries the risk of disenfranchising countless citizens; and

WHEREAS, expecting voters to report to public polling locations to vote in June in the midst of the COVID-19 crisis will hinder public participation in the democratic process, particularly among elderly and immune-compromised voters, and undermine the legislative intent of provisions like N.J.S.A. 19:8-2 and 19:8-3.1, which are designed to ensure that such voters can exercise their right to vote; and

WHEREAS, postponing the June primary elections will give New Jersey election officials enough time to take the necessary steps to address the negative impacts of the present health crisis on the upcoming primary elections, allowing voters to exercise their constitutional franchise without jeopardizing their health

5

and safety, and increase the likelihood that the elections will include in-person voting; and

WHEREAS, in lieu of a primary election, Independent candidates must submit petitions for direct nomination for the November general election, N.J.S.A. 19:13-3 through -9; and

WHEREAS, pursuant to N.J.S.A. 19:13-9, petitions for direct nomination for the November general election are due by 4:00 p.m. on the day of the primary election for the general election, which currently is June 2, 2020; and

WHEREAS, to ensure that Independent candidates are not disadvantaged relative to political party candidates, postponing the June primary elections should also result in the postponement of the deadline for petitions for direct nomination for the general election; and

WHEREAS, to limit unnecessary person-to-person contact during the COVID-19 emergency, Executive Order No. 105 (2020) also required the electronic collection and submission of political party candidate and delegate petitions through an online form created by the Secretary of State; and

WHEREAS, allowing Independent candidates to submit their petitions electronically, in addition to hand delivery, will help limit unnecessary person-to-person contact; and

WHEREAS, allowing voters to fill out and submit petitions electronically, so that candidates and campaigns need not physically gather petitions by going to individual voters in person, will help limit unnecessary person-to-person contact; and

WHEREAS, New Jersey citizens are presently faced with the choice of exercising their constitutional franchise, or endangering their health and safety; and

6

WHEREAS, the Constitution and statutes of the State of New Jersey, particularly the provisions of N.J.S.A. 26:13-1 et seq., N.J.S.A. App. A: 9-33 et seq., N.J.S.A. 38A:3-6.1, and N.J.S.A. 38A:2-4 and all amendments and supplements thereto, confer upon the Governor of the State of New Jersey certain emergency powers, which I have invoked;

NOW, THEREFORE, I, PHILIP D. MURPHY, Governor of the State of New Jersey, by virtue of the authority vested in me by the Constitution and by the Statutes of this State, do hereby ORDER and DIRECT:

1.   The federal and State primary elections scheduled for June 2, 2020, shall be postponed and rescheduled for Tuesday, July 7, 2020.

2.   Any other election scheduled for a date on or between May 13, 2020, and July 7, 2020, shall be postponed and rescheduled for Tuesday, July 7, 2020.

3.   With the primary elections being postponed and rescheduled for July 7, 2020, all deadlines for meeting statutory requirements for a primary election shall be calculated using the July 7, 2020 primary election date, except for any deadlines that occur prior to April 11, 2020 when calculated using the June 2, 2020 date, including but not limited to the filing deadline for candidate petitions for the primary election. Notwithstanding the preceding sentence, the party affiliation deadline under N.J.S.A. 19:23-45 shall be calculated based on the July 7, 2020 primary election date.

4.   Petitions for direct nomination for the general election filed under N.J.S.A. 19:13-3 through -9 shall be due by 4:00 p.m. on July 7, 2020.

7

5.   The electronic signature and submission requirements that are set forth in Paragraphs 1, 2, 3, 4, and 5 of Executive Order No. 105 (2020) shall be extended to the petitions for direct nomination for the general election filed under N.J.S.A. 19:13-3 through -9 that are due by 4:00 p.m. on July 7, 2020.

6.   This Order shall take effect immediately.

GIVEN, under my hand and seal this 8th day of April, Two Thousand and Twenty, and of the Independence of the United States, the Two Hundred and Forty-Fourth.

[seal]                           /s/ Philip D. Murphy

                                 Governor

Attest:

/s/ Matthew J. Platkin

Chief Counsel to the Governor